We will hear argument next in number 2011-1021, ENRE 213 PARTNERS. Mr. Kirk, that's when you're ready. May it please the court, good morning. This appeal concerns United States patent number 5465213, we'll call it the 213 patent, and specifically Claim 8, which is the only claim that's left in the patent following a re-examination. This patent was filed in 1990 originally and issued from a continuation in part filed in 1993. Now there are two rejections on appeal from the re-examination. The first rejection is a 102 novelty rejection based solely upon Japanese laid open patent application number 6197795. We call this the JP795 or the Japanese reference. The opposing counsel has called it the Tasaki reference. The other rejection is a 103 rejection based on obviousness based in part upon the Japanese reference, JP795, and an item called document and interactive online solution to four documentation problems. This has been called document or guerrilla by opposing counsel. Both of these rejections are defective as a matter of law and they also lack substantial evidence in order to stand. The patent office's rejections are flawed on multiple levels. At a higher level, as a matter of law, the record firmly establishes the patent office should not have used the Japanese reference as an invalidating reference because it's undeniably and fatally ambiguous as to a point that's highly relevant to both rejections. Without the Japanese reference, both of the patent office rejections fail as a matter of law. If the claim is construed so that it doesn't require separate searching of text and sales information, then does the dispute over the different Japanese translations matter? That's still an issue, your honor, because whether or not those other different limitations are found in claim 8, which we'll talk about throughout the discussion today, there were still, the patent office was looking at three separate English translations of the same Japanese reference. You have to understand that this is a Japanese application. This was never formalized, they never developed it, no prototypes were made. It was just simply a bare bones document that was presented and filed with the Japanese patent office. But what difference does it make if the point of distinction on these different translations is not a limitation of the claim? Well, your honor, the point of the matter is that it's a fundamental precept that the patent office should not be using any reference to invalidate a patent where that reference is deemed to be ambiguous. Yes, but it could be ambiguous with respect to an immaterial matter. And in that case, I don't see why ambiguity as to some totally collateral portion of the reference  Well, your honor, again, the matter in this case is that there were the additional limitations in claim 8, which you're talking about if, as Judge Linn had indicated, those are not a part of the case. There were still other substantial limitations, all disputed by various facets of the different English translations. We understand English translations are expert opinions, the prior art is actually the reference. And the fact that the requester himself or themselves actually submitted another translation on top of two other translations that were already in the record clearly indicates there were lots of questions and ambiguities associated with the reference. What would you have the patent office do whenever the patent office intended to rely on a foreign language reference? Well, your honor, as a matter of law... Have them, in every case, obtain some certified translation from some source that is unquestionable? Well, I think that the English translations of foreign language documents need to have certain standards they should meet. First of all, they should be certified that the translator certifies their ability to translate, has the credentials to translate and properly translate the information on the, in this case, Japanese, but a foreign language document. In addition, the translation should be taken from the perspective of one of ordinary skill in the art at the time of the invention. Those are all very clear requirements under patent law. In this case, none of the three original translations met those criteria, except for the fourth translation, which was submitted by 213. The 213 partner is the appellant in this case. So all three of the translations were defective because they didn't meet that requirement. It's very easy to use hindsight and look at a situation based upon what's going on now compared to what happened 20 years ago. As I stated earlier, this patent was filed in 1990. There was very little technology in this area back in 1990. In fact, looking back on it now where computers permeate our society, it's made very difficult for a reviewer at this stage to look back and ignore all those advancements in technology. However, that's exactly what they did was the patent office utilized a reference that was not based upon ordinary skill in the art. It's the perspective of one of ordinary skill in the art at the time of the invention, which was back in 1990. However, even if the Japanese reference is not considered, which it should not be, we believe that it's clear that it shouldn't be considered, the patent office violated its own precedent and improperly cherry-picked one of the four English translations that were set in front of it. In fact, it was a biased and defective translation provided by the re-exam requester instead of using the only viable translation that was properly translated from the perspective of ordinary skill in the art at the time of the invention. In addition, the translator wasn't biased by previewing the 213 patent before performing the translation. That was the fourth translation. It's called the Ablock translation, which should have been used by the patent office. Now, the patent office really doesn't dispute that that Ablock translation should have been used, aside from sidestepping the issue and saying, well, it's only addressing some issues which aren't in the case because these additional limitations aren't in Claim 8. Now, the patent office... I'm interested in the translation issue, but I'd like to get back to the claim language. Where in Claim 8 does it require that two acts of storing be performed separately or that the location of the storing be somehow separated? I'm looking at Claim 8. Yes. The first step of Claim 8 says storing the text of a plurality of books in a computer. The second step, an independent step and limitation within the claim, says storing sales information relating to said plurality of books in a computer. Now, those are two separate steps, two separate functions. I could also read that to say that they could be stored in the same location. Your Honor, that might be true, except that if you look at the... A claim interpretation should always be taken into perspective of the specification and using the specification for guidance. And it's very clear, and, in fact, it's expressly stated in the specification that the sales information is stored separately, and they use the word separately, from the text of the books. And I'll refer you specifically to A86, Column 11. Very top of the column. More particularly, the book description format of the present invention is divided into three portions. First, there is a book attributes description, which includes different attributes about the books, which might help one find common information about the book. There is also a second section called book contents description. Lastly, the book format includes the actual contents of the book. At the next paragraph, it says, it will be appreciated that book attributes and book contents description of the book format of the present invention are separated from the actual content of the book. Can't have a much more expressed guideline than that for how to interpret the claim on Claim 8. Now, the Patent Office takes the position that all these arguments are irrelevant because these two limitations aren't found in Claim 8. As we already talked about, there are three translations already on the books before the Ablock translation came along. That should have been enough to warn or at least caution the Patent Office not to rely on the Japanese reference and at least look into the issue. Now, this Court has held with regard to interpreting claims that a claim construction that gives meaning to all the terms of a claim is preferable to one that does not do so and also that claims are interpreted with an eye towards giving effect to all the terms. So in support of my position, Your Honor, that you look to the specification to help interpret the claims, it's also recognized it's not true claim differentiation and perhaps might be termed limitation differentiation, but a claim is supposed to be interpreted as to give full meaning and effect to each of the words in the claim, and that's exactly what's done here and it's consistent, fully consistent with the— I see I'm out of time at this point, but let me finish my answer. It's fully consistent with the understanding that the claim should be given its full scope and effect of each limitation within the claim, not just from claim to claim. Mr. Shurov, it's just one quick question. It seems to me that referring to the specification, not only is there some discussion in Column 11 about storing these different pieces of information, but you have throughout at different places, including Column 15, for example, or Line 35 and 6 statements that, you know, each disk has the capability of storing up to 65 sets of textual, graphics, and descriptive data. To me, that suggests that all of this information can be stored in the same place. Well, that's maybe perhaps in the same disk, but they're still stored separately. It's separate data items, like separate files. You may have a file that's the content of the text of the books, and you have a separate file that would be the other material, the sales information, for example. Even though they might be on the same disk, you might have them on the same disk. That doesn't mean they're not stored separately. Why don't we reserve the remainder of your time for rebuttal, and we'll hear from the solicitors. May it please the Court. This Court should affirm the Board's decision rejecting Claim 8 of the 213 patent over the prior art. The Board reasonably interpreted Claim 8 in view of the specification as a whole and rejected the patentee's attempt to read additional limitations into the claim during the reexamination to try and avoid the prior art. Likewise, the Board properly reviewed the patentee's arguments and expert declarations and recognized that they were directed solely to these  Applying Claim 8 to the prior art of record, the Board found substantial evidence that the Japanese 795 prior art referenced by Tazaki anticipates the claim and that the document prior art by Jarrell, in view of Tazaki, renders the claim obvious. What's your reaction to Mr. Shurovich's argument that Column 11 suggests that different data and information and text are separately stored? The reference at Column 11, we need to look at the specification as a whole and what the specification as a whole teaches. Column 11 is specifically directed only to the second embodiment in the patent. It does not apply to the first embodiment. If you take a look at the disclosure with respect to the first embodiment, you see that the specification also teaches that the text and sales information are stored together on the same memory device, in this case optical disks 20. That is on Column 4, lines 23 through 31. But the fact that they are on the same storage device doesn't mean that they are stored together, does it? Well, they are stored physically on the same device, so in that respect they're stored together. But the specification also further teaches that the definition of sales information includes selected pages and sample chapters of the text of the book. And so when you take that into account, that part of the text is going to be the information itself. With respect to the argument that the Tosaki Japanese 795 reference is fatally ambiguous, I believe this court recognized that there's only a very limited dispute as to the propriety of that translation. And as the board properly found, that is directed toward this idea of searchability, and searchability is nowhere in the claim language. So it's really directed to an unclaimed limitation, therefore it's not relevant and it's directed to an immaterial matter. What capabilities does the Patent Office have with respect to The Patent Office has the ability to use machine translations of foreign documents. We do have a few... That's not a great resource, particularly for a language which is Japanese. We also have a few translators who work at the Patent Office as well. But I think the way that this matter transpired was the correct way. You have someone put in an accurate translation of the foreign document, and if the patentee has a problem with it, then they raise it with the Patent Office in this case. The Patent Office view then is that the Patent Office will rely on a translation that it believes is true and accurate, but that if the applicant believes otherwise, the applicant can challenge it. That's correct. You don't have any resource to, you don't have a translating staff, you don't have any means to certify the accuracy of translations. We do have translators on staff as well, but the way that the regulations are in the Patent Office, really what we're looking for is accurate translations. In this case, the translation came in as part of the request for re-examination. It was a certified translation. There was an affidavit that came along with it that said that it was an accurate and precise translation. So the Patent Office properly relied on that translation. The patentee raised its issues with it, and the board properly took a look at it, determined that they were directed toward limitations that were not in the claim, and discarded them as such. I think I touched on this just briefly with respect to the point that the Patent Office improperly cherry-picked the translation that it relied upon. As I mentioned before, this translation came in as part of the request for re-examination. There was an affidavit. It was certified. There was an affidavit that attested to its accuracy, and Mr. Kuros, the gentleman who translated it, provided significant qualifications based on his education as an electrical engineer, as experienced as a Ben Rishi or, in other words, a Japanese patent examiner, and also a fair amount of experience translating Japanese patents into English. So the Patent Office did not improperly cherry-pick this translation out of a group. It's the one that was submitted with the re-examination request, and it also was certified and came with an affidavit of its accuracy. And I believe the Court is aware of the other issues in this case. Unless there's any other questions, I will yield the rest of my time. Thank you. Thank you, Mr. Stout. Mr. Turbidge, you have several minutes of rebuttal if you need it. Thank you, Your Honor. First of all, the Patent Office has stated a couple times that the two additional limitations in Claim 8 are somehow just added ex post facto. Actually, that's not correct. It's simply proper claim construction to have those as part of the claim language. The Patent Office also just stated that they need to use an accurate translation. Well, they also need to use a translation which is from one of Ordered Skill in the Art at the time of the invention, which the translations, none of the original three translations that the Patent Office had in front of it met that criteria. Why is it unreasonable to read the claims as encompassing simultaneous storage? I'm sorry? Why is it unreasonable to read the claims as encompassing simultaneous storage? Well, again, Your Honor, as indicated earlier, the claim language, there's two separate steps. Step one is storing this textbook. Step two is storing the sales information. And despite and contrary to the opposing counsel's statement, there's nothing in the patent itself as issued which talks about this information being stored together other than it being on the same disk perhaps. But it clearly, on several occasions, and it's indicated in the brief, and also I point out at least one of the ones where it's expressly stated where the information is stored separately. So it would be entirely inconsistent with the specification to say that those are somehow stored together now. The word's never been used. It's never been a part of the patent. With regard to the review and use of the third translation, the Patent Office's only response is, well, it met our criteria, which was it was certified and it came in with the re-exam request. That's not a substantial reason in order to pick one translation over another. In fact, I've shown why the fourth translation, the AdBlock translation, should very well have been the only translation utilized by the Patent Office. This was argued extensively by the patent owner, the two and three partners, the prior owner prior to that with the Patent Office, and all these arguments were simply rejected out of hand. It turns out, actually, the examining attorney who initially reviewed the matter gave no reason whatsoever for picking the third translation, simply said this was the one we're going to use. That's inadequate and improper under the Patent Office's own rules and under its own precedent. Now, the only excuse that they've used, again, is that the additional limitations are not a part of Claim 8, and the AdBlock translation the Patent Office does not dispute fully undermines both the rejections. The term at issue is moji gaijou, which correctly translated means image files stored in the books. They can't be stored separately. They are to be searched separately. This is supported both by the AdBlock translation and the associated Marsh Declaration, which is part of the record, too. Because the Patent Office's use of the third translation violated its own precedence, both rejections should be overturned and the Claim 8 should be held valid. Thank you. Your Honor, I have no other issues other than that. Do you have any questions further? Thank you, Mr. Turbidge. All right, thank you. Thank you both, Counselor, and the case is submitted.